# Exhibit C



**International Refugee
Assistance Project**

Date: November 17, 2022

U.S. Department of State
Office of Information Programs and Services
2201 C Street N.W., Suite B266
Washington, D.C. 20520-0000
Fax (202) 485-1669

*Sent via fax and certified mail*

RE:     **FOIA Request for Records Relating to Refugee Resettlement Case
Management Systems and Case Level Demographic and Processing Data.**

Dear Freedom of Information Officer:

This letter constitutes a request pursuant to the Freedom of Information Act (FOIA) on behalf of
the International Refugee Assistance Project (IRAP).  IRAP seeks a fee waiver.

### BACKGROUND

The world is facing its largest refugee crisis since World War II: 21.3 million refugees have been
forced to flee their homes and seek safety in another country.[1] There, many remain in physical
danger, face threats of deportation, and/or have unmet medical and other special needs.

The United States has long played a leading role in resettling the most vulnerable of these refugees
to safety and security within its borders. Under the U.S. Refugee Admissions Program ("USRAP"),
the Department of State's ("DOS") Bureau of Population, Refugees, and Migration operates the
Refugee Processing Center ("RPC"), which designs and maintains case management software
systems that support data entry, log interview results and other processing actions, and enable
individual and aggregate case tracking.[2] It also contracts with nonprofit organizations to run
overseas Resettlement Support Centers ("RSCs") that process resettlement cases and facilitate U.S.
Citizenship and Immigration Services ("USCIS") interviews of case members.

---

[1] *See* United Nations Commissioner for Refugees, Figures at a Glance (June 16, 2022), https://www.unhcr.org/en-us/figures-at-a-glance.html.
[2] These systems include the Worldwide Refugee Admissions Processing System ("WRAPS"), START, and Refugee
Processing Center Amazon Web Services Government Cloud ("RPC AWS"). *See* U.S. Dep't of State Bureau of
Administration Global Information Services, WRAPS PIA, 2-3 (January 2020), https://2017-2021.state.gov/wp-content/uploads/2020/06/Worldwide-Refugee-Admissions-Processing-System-WRAPS-PIA.pdf; U.S. Dep't of State
Bureau of Administration Global Information Services, RPC START & AWS PIA, 2 (August 2020),
https://www.state.gov/wp-content/uploads/2022/04/Refugee-Processing-Center-START-RPC-START-PIA.pdf. In
October 2020, DOS announced that it would be transitioning from WRAPS to START and RPC AWS and
migrating WRAPS data to these new systems. *See* U.S. Dep't of State, Media Note: Migration of Refugee
Processing System (Sep. 25, 2020),
https://immpolicytracking.org/media/documents/2020.09.25_Migration_of_Refugee_Case_Processing_System_Media_Note.pdf (hereinafter "U.S. Dep't of State, Media Note: Migration of Refugee Processing System").

For four years, the Trump Administration renounced the American tradition of welcoming refugees and curtailed USRAP. It capped refugee admissions ceilings at historic lows,[3] suspended admissions,[4] and eliminated public reports.[5] It also heightened security screening policies, reduced vetting and adjudications staffing, and denied refugees resettlement at a higher rate.[6]

Within weeks of taking office, President Biden pledged to rebuild and expand USRAP and bring greater transparency and accountability to the program.[7] His administration has restored admissions ceilings to their historical average[8] and vowed to address processing backlogs and improve the efficiency and fairness of security screening.[9] But these changes have not yet increased transparency in refugee processing or provided clarity to refugees living in limbo about when they can expect to travel to the United States or receive a final decision about their cases. Nor have these changes increased refugee admissions: As of October 31, 2022, the Biden Administration has only resettled 38,031 refugees to the United States—14,000 fewer than the number of refugees admitted by its predecessor at this stage of its term.[10]

## RECORDS REQUESTED

IRAP seeks disclosure of:

1. The following records for START, Refugee Processing Center Amazon Web Services Government Cloud ("RPC AWS"), and any other refugee case management software system currently used or accessed by DOS, RPC, and/or an RSC in the course of processing or considering a refugee for resettlement to the United States through USRAP (hereinafter "case management systems"):

---

[3] *See* Presidential Determination on Refugee Admissions for Fiscal Year 2018, 82 Fed. Reg. 49083, 49083 (Oct. 23, 2017) (limiting admissions to 45,000 refugees); Presidential Determination on Refugee Admissions for Fiscal Year 2019, 83 Fed. Reg. 55091, 55091 (Nov. 1, 2018) (limiting admissions to 30,000 refugees); Presidential Determination on Refugee Admissions for Fiscal Year 2020, 84 Fed. Reg. 65903, 65903 (Nov. 29, 2019) (limiting admissions to 18,000 refugees); Presidential Determination on Refugee Admissions for Fiscal Year 2021, 85 Fed. Reg. 71219, 71219 (Nov. 6, 2020) (limiting admissions to 15,000 refugees).
[4] *See* Protecting the Nation from Foreign Terrorist Entry into the United States, 82 Fed. Reg. 8977, 8979 (Feb. 1, 2017) (suspending USRAP for 120 days); Protecting the Nation from Foreign Terrorist Entry into the United States, 82 Fed. Reg. 13209, 13215-16 (Mar. 9, 2017) (same).
[5] *See* U.S. Dep't of State, Media Note: Migration of Refugee Processing System, *supra* n. 2.
[6] *See* USCIS, FY2021 Appropriations Reporting Requirement Refugee Data—FY2018 to FY2021: Number of Approvals and Denials Issued by USCIS (Feb. 2, 2021), https://www.uscis.gov/tools/reports-and-studies/refugee-processing-data/fy2021-appropriations-reporting-requirement-refugee-data-fy2018-to-fy2021; USCIS, FY2020 Appropriations Reporting Requirement Refugee Data—FY2016 to FY2019: Number of Approvals and Denials Issued by USCIS (Feb. 20, 2020), https://www.uscis.gov/tools/reports-and-studies/refugee-processing-data/fy2020-appropriations-reportingrequirement-refugee-data-fy2016-to-fy2019;
[7] *See* Rebuilding and Enhancing Programs to Resettle Refugees and Planning for the Impact of Climate Change on Migration, 86 Fed. Reg. 8839, 8839, 8841-43 (Feb. 9, 2021) (hereinafter "Rebuilding and Enhancing USRAP").
[8] *See* Emergency Presidential Determination on Refugee Admissions for Fiscal Year 2021, 86 Fed. Reg. 24475, 24475 (May 7, 2021) (increasing admissions to 62,500 refugees); Presidential Determination on Refugee Admissions for Fiscal Year 2022, 86 Fed. Reg. 57527, 57527 (Oct. 18, 2021) (setting admissions at 125,000 refugees); Presidential Determination on Refugee Admissions for Fiscal Year 2023, 87 Fed. Reg. 60547, 60547 (Oct. 6, 2022) (setting admissions at 125,000 refugees).
[9] Rebuilding and Enhancing USRAP, 86 Fed. Reg. at 8843.
[10] *See* Refugee Processing Center, Refugee Admissions Report (Oct. 31, 2022), available at https://www.wrapsnet.org/admissions-and-arrivals/.

    a. All manuals, standard operating procedures, guidance documents, and other similar records, including, but not limited to, those addressing data entry, data maintenance, data reports, data retrieval, and data retention;

    b. All data dictionaries and other similar records addressing status codes, data codes, abbreviations, acronyms, and events used in the case management systems;

    c. All database schema;

    d. All records sufficient to show a description of each type of report or query run by DOS, RPC, and/or an RSC using data from a case management system and the criteria for each report or query;

    e. All memoranda of understanding, interconnection security agreements, and other similar records for internal and external data sharing; and

    f. All contracts, memorandums of understanding, and other similar agreements with third parties regarding the creation, administration, operation, and maintenance of these case management systems;

2. All records sufficient to convey the following information for each unique online and offline[11] electronic refugee case with either (i) a case availability status of active, hold, or pending or (ii) a case availability status of closed or stateside with a closure or stateside date after September 30, 2014 (hereinafter "requested cases"):

    a. <u>Demographic Data</u>:

        i. Case availability status;

        ii. Case size;

        iii. Expedite priority;

        iv. Primary application for access to the program ("AATP") type;

        v. AATP subtype;

        vi. Country of residence;

        vii. Prescreening interview location;

        viii. Primary applicant's nationality;

        ix. Primary applicant's gender;

        x. Primary applicant's religion;

        xi. Legal representation;

    b. <u>Processing Data</u>:

        i. Acceptance to program status;

        ii. USCIS interview status;

        iii. I-590 stamp status;

        iv. Travel status;

    c. <u>Processing Dates</u>:

        i. Origination date[12];

---

[11] DOS's document retention policy requires the file for each electronic refugee case to be "[r]etain[ed] online for five (5) years after the refugee's arrival in the United States or case was inactivated, and then transfer[ed] to offline storage" for retention offline for an additional ten (10) years. *See* U.S. Dep't of State, U.S Dep't of State Records Schedule Ch. 25: Population, Refugees, and Migration Records – Worldwide Refugee Admissions Processing System (WRAPS), A-25-003-03a, 9 (May 30, 2008), https://foia.state.gov/_docs/RecordsDisposition/A-25.pdf.

[12] The origination date is the date when an anchor relative or qualifying parent in the United States completes the affidavit of relationship at a resettlement agency with the assistance of that agency. *See* RSC SOP 1a: AOR Processing, SOP-OP-RSC003-v1.9, FOIA Production No. C06844629, 4 (April 3, 2018),

      ii.  Received date for the primary applicant's referral, affidavit of relationship, or other form of USRAP application[13];

     iii.  Acceptance to program date[14];

     iv.  Each USCIS interview date;

      v.  Each USCIS decision date;

     vi.  Arrival date;

d.  <u>Denial Reasons</u>: For all requested cases in which USCIS ever issued a decision of "denial," the reason(s) for that denial and if a reason for denial was an inadmissibility ground, the specific inadmissibility ground;

e.  <u>Requests for Review (RFRs) Processing</u>: For all requested cases in which a motion to reconsider or a request for review (hereinafter "RFR") was filed:

      i.  The RFR filing date;

     ii.  The RFR result;

    iii.  The RFR result date;

Systems to be searched or queried for part 2 of the request include Worldwide Refugee Admissions Processing System ("WRAPS"), START, Refugee Processing Center Amazon Web Services Government Cloud ("RPC AWS"), and any other case management system used by DOS, RPC, or an RSC to process a refugee for resettlement consideration.

Where possible, parts 2(a) and 2(b) of this request refer to specific WRAPS fields, as identified from RSC Standard Operating Procedures (RSC SOPs)[15] and WRAPS Status Codes, Data Codes, and Abbreviations/Acronyms, as updated on February 9, 2018[16]. Should a case management system use different names to refer to these fields, the request should be construed to refer to the fields in that system to which data from the referenced WRAPS field migrated during any data migration between WRAPS and that system. Should any information requested in part 2 not be

---

https://web.tresorit.com/l/8gqez#QihqBIqpBr7qOc8lTDdHxQ&g79by0jYVQq3n1UrdCiE5bqhhmN7M1CF&8sWpDBJgcDlMOjdTG4sHpAs80wcisOIE&4I01GVJU0WFXQ4W33eN8gxyUnUXNRgFd&viewer=T6cCuzEKxkdBCuNhd0PyOPu6M4i9X7Oy; RSC SOP 1b: CAM-AOR Processing, SOP-OP-RSC-009-vl.l, FOIA Production No. C06844630, 5 (July 17, 2017),
https://web.tresorit.com/l/8gqez#QihqBIqpBr7qOc8lTDdHxQ&g79by0jYVQq3n1UrdCiE5bqhhmN7M1CF&8sWpDBJgcDlMOjdTG4sHpAs80wcisOIE&4I01GVJU0WFXQ4W33eN8gxyUnUXNRgFd&viewer=IaVNEZhXjbPCKhYoyvhnh2r9eahUeokK.

[13] The received date is the date on which a Resettlement Support Center receives a resettlement application. *See* RSC SOP 1: Case Creation, SOP-OP-RSC001-v2.4, FOIA Production No. C06844627, 2 (Dec. 19, 2017),
https://web.tresorit.com/l/8gqez#QihqBIqpBr7qOc8lTDdHxQ&g79by0jYVQq3n1UrdCiE5bqhhmN7M1CF&8sWpDBJgcDlMOjdTG4sHpAs80wcisOIE&4I01GVJU0WFXQ4W33eN8gxyUnUXNRgFd&viewer=tOaCX1zfge9TpWhTUY8bdF6BNllPYYJW.

[14] The acceptance to program date is the date on which a requested case is accepted into or excluded from USRAP.

[15] DOS produced the RSC SOPs in response a FOIA dated May 24, 2019, and labeled them as Doc. Nos. C06844619, C06844621-C06844625, C06844627, C06844629-C06844638, C06844642. They are available at:
https://web.tresorit.com/l/8gqez#QihqBIqpBr7qOc8lTDdHxQ&g79by0jYVQq3n1UrdCiE5bqhhmN7M1CF&8sWpDBJgcDlMOjdTG4sHpAs80wcisOIE&4I01GVJU0WFXQ4W33eN8gxyUnUXNRgFd.

[16] DOS produced WRAPS Status Codes, Data Codes, and Abbreviations/Acronyms, updated February 9, 2018, in response to a FOIA dated May 24, 2019, and labeled it as Doc. No. C06844641. It is available at:
https://web.tresorit.com/l/8gqez#QihqBIqpBr7qOc8lTDdHxQ&g79by0jYVQq3n1UrdCiE5bqhhmN7M1CF&8sWpDBJgcDlMOjdTG4sHpAs80wcisOIE&uiqEb8k0pC86HuJdksqbBn43eYwibrKg&viewer=nKPPnTH7PnyvvTnP9DuO6zUaLTaKbYhb.

available for a requested case or for the entire time period covered by part 2, the request should be construed to request whatever information is available for all requested cases during this time.

## FORMAT OF PRODUCTION FOR PART 2 RECORDS

Please produce the records for part 2 of this request in CSV or other spreadsheet format that allows for manipulation of the data, if readily reproducible in that format. *See* 5 U.S.C. § 552(a)(3)(B).

Please also produce these records in a manner that allows for aggregating all information requested for each requested case into a single record of responsive information for that case as described below:

1. If possible, all requested information for all requested cases should be produced in a single spreadsheet wherein each row corresponds to a requested case and each column corresponds to a piece of requested information;

2. Should it not be possible to produce all requested information for all requested cases in a single spreadsheet as described in "1" above, the request should be construed to request the following:
   a. The production of the information in part 2(a) together for a given requested case and alongside each other piece of requested information for that case;
   b. The production of the information in part (2)(b) together for a given requested case;
   c. The production of the information in part (2)(c) together for a given requested case; and
   d. The production of the information in part 2(e) together for a given requested case;

3. Should it not be possible to produce the requested information as described in "2" above, the request should be construed to request the production of the following alongside each piece of requested information for a requested case:
   a. The requested case's case number; or
   b. Any other existing unique identifier for each requested case; or
   c. Any existing unique identifier for the primary applicant of each requested case;

4. Should it not be possible to produce an existing unique identifier alongside each bit of requested information as described in "3" above, the request should be construed to request the assignment of a unique number to each requested case and the production of the assigned unique number alongside each piece of requested information for that case.

## REASONABLE SEARCH FOR RECORDS

DOS must "ma[k]e a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *See Montgomery v. Internal Revenue Serv.*, 40 F.4th 702, 714 (D.C. Cir. 2022). It "cannot limit its search to only one record system if there are others that are likely to turn up the information requested." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990); *see also Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 327 (D.C. Cir. 1999) ("It is well-settled that if an agency has reason to know that certain places may contain responsive documents, it is obligated under FOIA to search barring an undue burden").

A reasonable search includes "using a query to search for and extract a particular arrangement or subset of data already maintained in an agency's database." *See Ctr. for Investigative Reporting v.*

*U.S. Dep't of Just.*, 14 F.4th 916, 938 (9th Cir. 2021). If existing queries are insufficient to extract requested records from a database, the agency must "writ[e] new computer code" to do so. *Long v. Cent. Intel. Agency*, No. 15-cv-1734 (TSC), 2019 WL 4277362, at *4 (D.D.C. Sept. 10, 2019); *see also Schladetsch v. U.S. Dep't of Hous. & Urban Dev.*, No. 99-0175, 2000 WL 33372125, at *3 (D.D.C. Apr. 4, 2000) ("Because an electronic search of computer databases does not amount to a creation of records, … it follows that the programming necessary to instruct the computer to conduct the search does not involve the creation of a record." (internal citation omitted)).

## THE REQUESTOR

IRAP is a 501(c)(3) nonprofit and nonpartisan global legal aid and advocacy organization working to create a world where refugees and all people seeking safety are empowered to claim their right to freedom of movement and a path to lasting refuge. It utilizes media and systemic policy advocacy, direct legal aid, and impact litigation to serve the world's most persecuted individuals and empower the next generation of human rights leaders.

IRAP publishes reports, know-your-rights documents, and other educational materials that are widely disseminated to the public, including through its website. These materials are made available to everyone—including tax-exempt organizations, non-profit groups, lawyers, law students, refugees, and other displaced people—free of charge. IRAP also has a blog; publishes an electronic newsletter distributed to subscribers via email; and releases information via social media platforms such as Twitter and Facebook. Material obtained through FOIA are integral to this work, and IRAP routinely publishes materials that it obtains through FOIA.

Accordingly, IRAP is a "representative of the news media" within the meaning of the FOIA. *See* 5 U.S.C. § 552(a)(4)(A)(iii) (defining a representative of the news media as an entity that "gathers information of potential interest to a segment of the public" and "uses its editorial skills to turn raw materials into a distinct work, and distributes that work to an audience"); *accord Nat'l Sec. Archive v. U.S. Dep't of Def.*, 880 F.2d 1381, 1397 (D.C. Cir. 1989). Other non-profits that similarly engage in media advocacy, in addition to other policy advocacy and legal work, have been found to be a "representative of a news media" within the meaning of the FOIA. *See, e.g., Serv. Women's Action Network v. Dep't of Def.*, 888 F. Supp. 2d 282, 287-88 (D. Conn. 2012) (concluding that the ACLU is a news representative); *Elec. Privacy Info. Ctr. v. Dep't of Def.*, 241 F. Supp. 2d 5, 10-15 (D.D.C. 2003) (same for the EPIC); *Judicial Watch, Inc. v. U.S. Dep't of Justice*, 133 F. Supp. 2d 52, 53-54 (D.D.C. 2000) (same for Judicial Watch, a public interest law firm with a website and a radio show).

## FEE WAIVER

IRAP seeks a full fee waiver. A requesting party is entitled to the production of responsive records "without charge or at a reduced rate" where it demonstrates that "disclosure of the requested information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 8 U.S.C. § 552(a)(4)(iii); *see also Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1312 (D.C. Cir. 2003) ("Congress amended FOIA to ensure that it be 'liberally construed in favor of waivers for noncommerical requesters.'" (quoting *McClellan Ecological Seepage Situation v. Carlucci*, 835 F.2d 1282, 1284 (9th Cir. 1987)).

Disclosing the requested records will foster additional public understanding of USRAP, particularly the demographics of refugees the U.S. government considers for resettlement in the program, variances in processing times and adjudication results between demographics, and backlogs and choke points in the program. IRAP will disseminate the demographic, processing, and adjudication data sought in part 2 of its request in reports about USRAP processing, in its electronic newsletter, and on its social media platforms. It will add the case management software system records sought in part 1 of its request to its online repository of USRAP materials and use these materials to refine future requests for demographic, processing, and adjudication data. Finally, IRAP will also update its existing know-your-rights documents and educational materials to reference processing and adjudication trends exhibited by the data and account for changes in USRAP processing revealed by the records for new case management systems.

IRAP has no commercial interest in the disclosure of demographic, processing, and adjudication data or the requested case management system records. As a nonprofit, IRAP has no commercial interests by definition. *See Am. Ctr. for L. & Just. v. U.S. Dep't of Homeland Sec.*, 573 F. Supp. 3d 78, 83 (D.D.C. 2021). Instead, as mentioned earlier, its interests are utilizing media and systemic policy advocacy, direct legal aid, and impact litigation to serve the world's most persecuted individuals and empower the next generation of human rights leaders.

In any event, as discussed earlier, IRAP is a "representative of the news media" and does not seek the records requested for commercial use. Accordingly, should the government assess fees for the processing of this request, those fees should be "limited to reasonable standard charges for document duplication" alone. *See* 5 U.S.C. § 552(a)(4)(A)(ii)(II).

* * *

Thank you for your consideration of this request. Please provide the requested records to:

> Chris Opila
> International Refugee Assistance Project
> One Battery Park Plaza, 4th floor
> New York, NY 10004
> copila@refugeerights.org

Please notify us in advance if the cost of producing the documents requested exceeds $100.00. If you have any questions regarding this request, please contact Chris Opila at (646) 946-7381 or copila@refugeerights.org.

> Sincerely,
>
> _____
> Chris Opila
> Justice Catalyst Litigation Fellow*
> International Refugee Assistance Project
> copila@refugeerights.org

Kate Meyer
Staff Attorney
International Refugee Assistance Project
kmeyer@refugeerights.org

Mariko Hirose
Litigation Director
International Refugee Assistance Project
mhirose@refugeerights.org

Lacy Broemel
Policy Analyst
International Refugee Assistance Project
lbroemel@refugeerights.org

Stephen Poellot
Legal Knowledge and Training Director
International Refugee Assistance Project
spoellot@refugeerights.org

*Member of the New Mexico Bar. New York Bar admission pending. Supervised by attorneys who are members of the New York Bar.